IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WILLIAM NICKUM,

        Plaintiff,

vs.                           Case No. 17-2011-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On July 31, 2015, administrative law judge (ALJ) Michael D. Mance issued his decision (R. at 17-27). Plaintiff alleges that he has been disabled since August 1, 2012 (R. at 17). Plaintiff is insured for disability insurance benefits through March 31,

2016 (R. at 19). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from his alleged onset date (R. at 19). At step two, the ALJ found that plaintiff has severe impairments (R. at 20). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21-22). After determining plaintiff's RFC (R. at 22), the ALJ found at step four that plaintiff is able to perform past relevant work (R. at 26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III. Did the ALJ err in his consideration of plaintiff's mental impairments?**

There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(a). Symptoms will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence that he or she has a medically determinable impairment and that the impairment could reasonably be expected to produce the alleged symptoms. SSR 96-3p, 1996 WL 374181 at *2.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395

5

F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ gave significant weight to the opinion of Dr. Mintz that plaintiff did not appear to show any symptoms of mental illness or intellectual impairment. The ALJ found that consistent with the medical evidence, which, according to the ALJ, generally established that plaintiff did not experience persistent mental health symptoms (R. at 21). Plaintiff asserts that the ALJ's conclusion that plaintiff did not suffer from a medically determinable mental impairment is not supported by substantial evidence.

6

On August 30, 2013, plaintiff underwent a mental status examination by Dr. Mintz, a psychologist (R. at 907-910). Dr. Mintz concluded that plaintiff did not appear to exhibit symptoms of a mental illness or a cognitive disorder. Dr. Mintz indicated that plaintiff appeared able to understand simple and intermediate instructions, his concentration was intact, and he could relate to others in the workplace (R. at 909). He did not make a diagnosis of any psychological or mental disorder (R. at 910).

On October 18, 2013, Dr. Fantz reviewed the medical records and performed a psychological assessment of the plaintiff (R. at 76). After a review of the record, including the report from Dr. Mintz, Dr. Fantz concluded that plaintiff had no medically determinable mental impairment (R. at 76).

In December 2013, plaintiff underwent neuropsychological testing (R. at 969). The totality of neurocognitive testing failed to indicate a current pattern indicate of neuropathology. The plaintiff did not meet the criteria for any diagnosable cognitive disorder or psychiatric condition (R. at 971). The testing was deemed valid. The overall IQ was in the high average range (R. at 972). There were no indications of emotional, thought, behavioral, or interpersonal dysfunction. There was no diagnosis of any psychiatric or mental impairment (R. at 967, 974). The report noted that non-neurologic

conditions such as chronic pain and fatigue may be impacting plaintiff's subjective sense of cognitive functioning. Plaintiff was not thought to demonstrate the signs or symptoms of organic brain dysfunction (R. at 974).

On April 14, 2014, Dr. Tashner also reviewed the medical records and performed a psychological assessment of the plaintiff. After a review of the psychological assessments set forth above, Dr. Tashner also concluded that plaintiff had no medically determinable mental impairment (R. at 89-90).

Thus, every psychological assessment in the record concluded that plaintiff did not suffer from a diagnosable mental, psychological or psychiatric impairment. As noted above, symptoms will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence that he or she has a medically determinable impairment. Plaintiff has failed to present objective medical evidence of a medically determinable mental impairment.

Plaintiff's "subjective" sense of cognitive functioning (R. at 974) is not objective medical evidence or a diagnosis of a medically determinable mental impairment. Even though Dr. Mintz noted some decline of cognitive functioning, it should first be noted that Dr. Mintz indicated that it was mild (R. at 910). Second, neither he nor the other three medical sources were able

to diagnose a medically determinable impairment.  Furthermore, Dr. Fantz and Dr. Tashner stated that although plaintiff alleged problems with cognitive decline, they both concluded that there was no medical evidence of record to support this assertion (R. at 76, 90).  Plaintiff noted that Dr. Mintz estimated that plaintiff was functioning in the low average intellectual range; however, IQ testing in December 2013 found that plaintiff's verbal and non-verbal reasoning abilities were in the high average range (R. at 972).  The court will not reweigh the evidence.  Thus, substantial evidence supports the ALJ's finding that plaintiff did not have a medically determinable mental impairment.

Plaintiff alleges that the ALJ failed to address his limitations due to pain and fatigue caused by neuropathy and sleep apnea (Doc. 9 at 23).  The ALJ diagnosed both neuropathy and sleep apnea as severe impairments (R. at 20).  Dr. May, the state agency consultant, considered both plaintiff's neuropathy and fatigue and lack of sleep in making his physical RFC findings (R. at 93).  The ALJ also reviewed the evidence relating to neuropathy and sleep apnea (R. at 24-25).  The ALJ considered the opinions of the state agency consultants, but in light of plaintiff's persistent neuropathy and degenerative disc disease, found that plaintiff had RFC limitations more restrictive than those opined by Dr. May (R. at 26).  Plaintiff

9

fails to identify any medical source opinion indicating that pain and fatigue caused by neuropathy and sleep apnea resulted in additional limitations not contained in the ALJ's RFC findings. The court finds that the ALJ adequately addressed plaintiff's pain and fatigue caused by neuropathy and sleep apnea, and that substantial evidence supported his RFC findings.

Plaintiff also alleges error by the ALJ in his consideration of the 3rd party statement regarding plaintiff's mental impairments (Doc. 9 at 25). The ALJ found that this statement followed plaintiff's subjective reports, but did not establish that plaintiff is unable to perform work-related activity within the RFC set forth by the ALJ. The ALJ gave the statement little weight for the same reasons plaintiff was found to be less than fully credible (R. at 26).

In the case of Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996), the court found that it was clear that the ALJ considered the testimony of plaintiff's spouse in making his decision because he referred to it in his opinion. The court declined plaintiff's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony. In the case before the court, the ALJ clearly considered the opinion of the 3rd party and gave it less weight than the opinions of the medical sources.

The ALJ had previously considered plaintiff's credibility, and based on plaintiff's subjective complaints, the ALJ found that plaintiff's RFC was more restrictive than the RFC set forth by the consultative medical sources. However, in discounting some of plaintiff's subjective allegations of limitations, the ALJ reasonably relied on the medical source opinions, and gave greater weight to the medical source opinions (R. at 26). The ALJ also considered plaintiff's daily activities not as conclusive proof of an ability to work, but as one factor, in addition to the medical source opinions, and the medical and other evidence in determining plaintiff's RFC (R. at 24). The court finds no clear error in the ALJ's credibility analysis, and the weight accorded to the medical source opinions, and the court will not reweigh the evidence. The court finds that the balance of the ALJ's credibility analysis is supported by substantial evidence. See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

Finally, plaintiff argues that the ALJ never explained how plaintiff could perform work at SVP 8 despite the cognitive decline noted in the medical records (Doc. 9 at 24). In his findings, the ALJ found that plaintiff could perform past relevant work, including 1) a logistics officer, SVP 8, 2) a business development manager, SVP 8, and 3) an invoice clerk,

SVP 4 (R. at 26-27).[1] Semi-skilled work corresponds to an SVP of 3-4; skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704 at *3. First, as noted above, plaintiff failed to establish by objective medical evidence that plaintiff had a medically determinable mental impairment. None of the four medical sources that addressed the issue found a medically determinable mental impairment. Both Dr. Fantz and Dr. Tashner specifically opined that there was no medical evidence to support a finding of cognitive decline (R. at 76, 90). The December 2013 evaluation concluded that plaintiff did not meet the criteria for any diagnosable cognitive disorder or psychiatric condition (R. at 971). Dr. Mintz found no symptoms of a mental illness or significant symptoms of a cognitive disorder (R. at 909).

Second, at step four, the Commissioner need not establish that a prior job exists in significant numbers in the national economy to find that a job constitutes past relevant work. Wells v. Colvin, 727 F.3d 1061, 1074 (10th Cir. 2013). Thus, the ALJ's step four determination can be upheld even if plaintiff can only perform the job of invoice clerk, with an SVP of 4. Plaintiff has failed to present any medical opinion evidence that plaintiff cannot perform such work. Plaintiff has also failed to present any evidence that a person with the RFC

---

[1] SVP stands for specific vocational preparation time. SSR 00-40, 2000 WL 1898704 at *3.

findings found by the ALJ, which are supported by substantial evidence, cannot perform the work of an invoice clerk. The vocational expert testified that plaintiff could perform such work (R. at 65-67). Plaintiff's argument is therefore without merit.

**IV. Is the ALJ decision invalid because the ALJ was appointed in violation of the Appointments Clause?**

On June 21, 2018, the U.S. Supreme Court issued its opinion in <u>Lucia v. S.E.C.</u>, 138 S. Ct. 2044, 2049-2055 (2018), holding that ALJs of the Securities and Exchange Commission (SEC) are officers under the Appointments Clause, and can only be appointed by the President, a court of law, or a head of a department. The ALJ in this case had been appointed by SEC staff members; therefore the ALJ was not appointed by one of those designated in the Appointments Clause. 138 S. Ct. at 2051. The court found that since Lucia made a timely challenge to the constitutional validity of the appointment of the ALJ, the case was remanded in order for the case to be heard by a properly appointed ALJ. 138 S. Ct. at 2055.

Plaintiff argues that the appointment of Social Security ALJs are also subject to the Appointments Clause, and asserts that the Social Security ALJs were not appointed by one of those designated in the Appointments Clause. Therefore, the decision is void.

Following the Supreme Court decision in Lucia, this court asked the parties for additional briefing about the impact of Lucia in this case (Doc. 18). Defendant, in her response, does not dispute the application of the Appointments Clause to Social Security ALJs, nor does she argue that the Social Security ALJs were appointed pursuant to the Appointments Clause. This court notes that on July 23, 2018, the Solicitor General released a memorandum acknowledging that the Department of Justice understands the Court's reasoning to encompass all ALJs in traditional and independent agencies who preside over adversarial administrative proceedings and possess the adjudicative powers highlighted in Lucia. Therefore, going forward, ALJs must be appointed or have their prior appointment ratified in a manner consistent with the Appointments Clause. Page v. Commissioner of Social Security, 2018 WL 5668850 at *1 (E.D. Mich. Oct. 31, 2018). Defendant's only argument is that plaintiff has waived his right to raise this issue because plaintiff failed to raise it in a timely manner before the ALJ or the Social Security Administration (Doc. 21). Plaintiff concedes that he did not raise this issue until filing his brief with this court on July 8, 2017 (Doc. 9, 26).

In Lucia, the court held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." 138

S. Ct. at 2055.  In that case, Lucia contested the validity of the ALJs appointment before the Commission, and continued to press the claim in the courts.  Id.  The question is therefore what constitutes a timely challenge.

Courts generally expect parties to raise constitutional challenges under the Appointments Clause at the administrative level, and hold them responsible for failing to do so.  Jones Brothers, Inc. v. Secretary of Labor, 898 F.3d 669, 677 (6th Cir. 2018).  Parties may not wait until they are in court to raise a statutory defect in the appointment of the official who issued the agency's initial decision.  United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952).  A party is required to exhaust his constitutional claim before the administrative agency before seeking review in federal court.  Elgin v. Dep't of Treasury, 567 U.S. 1, 23 (2012).  It is well established that a party generally may not challenge an agency decision on a basis that was not presented to the agency.  Therefore, a challenge under the Appointments Clause which was first raised in federal court was deemed waived.  In re DBC, 545 F.3d 1373, 1377, 1378-1381 (Fed. Cir. 2008).  Requiring exhaustion of such claims allows agencies to take into account the specific facts of each matter, and to change course if appropriate.  Gilmore v. Weatherford, 694 F.3d 1160, 1169 (10th Cir. 2012); Kon v. United

States Securities and Exchange Commission, Case No. 17-3066 (10th Cir. Mar. 31, 2017).

As of this date, courts that have considered this issue have unanimously rejected attacks on the validity of the ALJ's appointment under Lucia if claimant failed to make a constitutional challenge at the administrative level before the ALJ or the Appeals Council. Kabani & Company, Inc. v. U.S. Securities & Exchange Commission, 733 Fed. Appx. 918, 919 (9th Cir. Aug. 13, 2018); Faulkner v. Commissioner of Social Security, 2018 WL 6059403 at *2-3 (W.D. Tenn. Nov. 19, 2018); Page v. Commissioner of Social Security, 2018 WL 5668850 at *2-3 (E.D. Mich. Oct. 31, 2018); Salmeron v. Berryhill, 2018 WL 4998107 at *3 n.5 (C.D. Cal. Oct. 15, 2018); Garrison v. Berryhill, 2018 WL 4924554 at *2 (W.D. N.C. Oct. 10, 2018); Davidson v. Commissioner of Social Security, 2018 WL 4680327 at *1-2 (M.D. Tenn. Sept. 28, 2018); Stearns v. Berryhill, 2018 WL 4380984 at *4-6 (N.D. Iowa, Sept. 14, 2018); Davis v. Commissioner of Social Security, 2018 WL 4300505 at *8-9 (N.D. Iowa, Sept. 10, 2018.

Plaintiff relies on the case of Sims v. Apfel, 530 U.S. 103, 112 (2000), which held that claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. However, in that decision, the

court expressly stated that whether a claimant must exhaust issues before the ALJ "is not before us." 530 U.S. at 107.[2] In deciding Sims, the court noted that the form to be filled out seeking review by the Appeals Council does not depend much, if at all, on claimants to identify issues for review (the form only provides three lines for the request for review). The court further stated that the Appeals Council, not the claimant, has primary responsibility for identifying and developing the issues. The court concluded that claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. 530 U.S. at 112.[3]

The key in deciding this issue is in the language of the Lucia decision. In that case, the court held that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. The court stated that Lucia made such a timely challenge because he contested the validity of Judge Elliot's appointment before the Commission, and continued pressing that claim in the federal courts. 138 S. Ct. at 2055. Unlike the

---

[2] Plaintiff's brief also notes that raising constitutional issues before the agency is difficult when some claimants are represented by non-attorney representatives, or are not represented at all (Doc. 26 at 2). However, in this case, plaintiff was represented at his hearing before the ALJ by an attorney (R. at 34, 9). Furthermore, in Sims, the dissenting opinion pointed out that the Social Security Administration stated in its brief that it does not apply its waiver rule where the claimant is not represented. 530 U.S. at 119.

[3] Part II-B of the Sims opinion, cited here, is a plurality opinion of 4 justices. Justice O'Connor concurred in part and concurred in the judgment, but did not join Part II-B of the opinion. 530 U.S. at 113.

case in Lucia, plaintiff in the case before the court never raised the Appointments Clause issue before the agency. Furthermore, in Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 15 (2000), the court reiterated that 42 U.S.C. § 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in the court. Consistent with the U.S. Supreme Court rulings in Shalala and Sims, other courts that have addressed this issue have held that Sims is not applicable when the claimant has failed to raise his claim before the ALJ or the Appeals Council. Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017); Stearns v. Berryhill, 2018 WL 4380984 at *4-5 (N.D. Iowa, Sept. 14, 2018)(Strand, C.J.); Davis v. Commissioner of Social Security, 2018 WL 4300505 at *8-9 (N.D. Iowa, Sept. 10, 2018)(Reade, J.). In light of the fact that plaintiff never raised this issue before the Social Security Administration, the court finds that plaintiff did not make a timely challenge to the constitutional validity of the appointment of the ALJ.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed.

Dated this 7th day of December 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge